UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ESTATE OF TYLER S. RUSHING, et al.,

    Plaintiffs,

    v.

AG PRIVATE PROTECTION, INC., et al.,

    Defendants.

No. 2:18-cv-01692-MCE-AC

**ORDER**

By way of this action, Plaintiffs seek to recover for injuries sustained as a result of a fatal altercation between Tyler S. Rushing ("Decedent") and various named Defendants, which include employees of a private security firm as well as members of the Chico Police Department and the Butte County Sheriff's Office (generally referred to as "Defendants").[1] Presently before the Court is Plaintiffs' Motion for Summary Adjudication (ECF No. 23) as to the discrete issue of whether one Defendant, Officer

///

///

---

[1] Given this Court's disproportionately high case load, and in the interest of conserving judicial resources and expediting a decision in this case, the Court will not recount details with which the parties are intimately familiar. To be clear, the Court has considered all evidence and arguments in the record, but it limits its written decision to only that which is necessary to resolve the parties' instant arguments.

1

Alex Fliehr, ("Officer Fliehr") used excessive force when he used his taser against Decedent after he had been shot. For the following reasons, that Motion is DENIED.[2]

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment. See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995). The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in

---

[2] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs. See E.D. Cal. Local R. 230(g).

2

1  the record, including depositions, documents, electronically stored information,
2  affidavits[,] or declarations . . . or other materials; or showing that the materials cited do
3  not establish the absence or presence of a genuine dispute, or that an adverse party
4  cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The
5  opposing party must demonstrate that the fact in contention is material, i.e., a fact that
6  might affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby,
7  Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and
8  Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).  The opposing party must also
9  demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is
10 such that a reasonable jury could return a verdict for the nonmoving party." Anderson,
11 477 U.S. at 248.  In other words, the judge needs to answer the preliminary question
12 before the evidence is left to the jury of "not whether there is literally no evidence, but
13 whether there is any upon which a jury could properly proceed to find a verdict for the
14 party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251
15 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original).
16 As the Supreme Court explained, "[w]hen the moving party has carried its burden under
17 Rule [56(a)], its opponent must do more than simply show that there is some
18 metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.  Therefore,
19 "[w]here the record taken as a whole could not lead a rational trier of fact to find for the
20 nonmoving party, there is no 'genuine issue for trial.'" Id. at 587.

21 　　In resolving a summary judgment motion, the evidence of the opposing party is to
22 be believed, and all reasonable inferences that may be drawn from the facts placed
23 before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at
24 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's
25 obligation to produce a factual predicate from which the inference may be drawn.
26 Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd,
27 810 F.2d 898 (9th Cir. 1987).
28 ///

Very generally, according to Plaintiffs, Officer Fliehr's "use of a taser on a non-threatening, subdued, and injured suspect lying on the ground violated the Fourth Amendment," and Officer Flier "is not entitled to qualified immunity." Mot., ECF No. 23-1, at 6, 14. The gist of Plaintiffs' argument is that at the time the taser was used, Decedent posed no threat to officers because he had been shot twice and was lying on the ground.

A jury could very conceivably reject this argument, however, because, as Defendants point out, there is ample evidence that before Officer Fliehr resorted to using the taser, the following events occurred: (1) just before 11:00 p.m., a security guard was called out to a title and escrow company building where an alarm had been tripped; (2) Decedent, who was on the premises, stabbed the security guard who at some point shot Decedent in the chest; (3) Decedent then fled and locked himself in a bathroom within the building; (4) after officers responded to the scene, Decedent announced that he had a gun and that they were "all going to fucking die"; (4) as it approached midnight, after officers attempted to convince Decedent to surrender himself to obtain medical care, they forced open the bathroom door and utilized a shield and K-9 to try to subdue Decedent; (5) although Decedent had already been shot once, he still managed to attack the officers, stabbing one in the head with a ceramic shard he had broken off of the toilet and one in the neck with a ballpoint pen; (6) Decedent was then shot twice by an officer and fell to the ground with one hand concealed beneath him; (7) Officer Fliehr contends that he then saw Decedent move; (8) Officer Fliehr then announced to other officers that Decedent was not dead and deployed his taser so Decedent could be handcuffed; and (9) when Decedent was handcuffed, he still had the ballpoint pen in his hand. Given the totality of these "tense, uncertain, and rapidly evolving" circumstances, a jury could find that utilizing the taser was reasonable. Graham v. Connor, 490 U.S. 386, 396-97 (1989).

This is true even if the body camera footage from the event may not clearly show that Decedent made any movement immediately prior to Officer Fliehr deciding to use the taser. Whether or not Decedent moved is not necessarily dispositive in the first

4

place because Defendants have offered evidence supporting the unsurprising proposition that suspects often "play possum" under circumstances such as those here to lull their would-be attackers into a false sense of security, hoping officers will approach with less caution and make themselves vulnerable to attack.  Especially given the fact that Decedent had already stabbed three people with makeshift weapons of convenience, a jury could find that it was reasonable for officers to proceed based on the assumption Decedent still presented a threat.  Moreover, to the extent Plaintiffs' argument turns on the available body camera footage, Defendants also offer evidence that given the camera's placement and the way the video is captured, it does not necessarily reflect events from an officer's particular perspective (e.g., the camera is located below the officer's eyes at chest level and purportedly utilizes two-dimensional technology as opposed to three-dimensional), and does not undermine Officer Fliehr's perception of events.  Accordingly, for all of the reasons just stated, Plaintiffs' Motion for Summary Adjudication (ECF No. 23) is DENIED.[3]

IT IS SO ORDERED.

DATED: November 19, 2019

                                                 _____
                                                 MORRISON C. ENGLAND, JR.
                                                 UNITED STATES DISTRICT JUDGE

---

[3] Given this conclusion, the Court need not reach the parties' qualified immunity arguments.

5