**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

NOV 30 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ESTATE OF TYLER S. RUSHING; SCOTT K. RUSHING; PAULA L. RUSHING, <br><br>          Plaintiffs-Appellants, <br><br> v. <br><br> AG PRIVATE PROTECTION, INC.; EDGAR SANCHEZ; CITY OF CHICO; CHICO POLICE DEPARTMENT; SCOTT RUPPEL; CEDRIC SCHWYZER; ALEX FLIEHR; JEREMY GAGNEBIN; COUNTY OF BUTTE; BUTTE COUNTY SHERIFF'S OFFICE; IAN DICKERSON, <br><br>          Defendants-Appellees. | No.   20-16428 <br><br> D.C. No. 2:18-cv-01692-MCE-AC <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, Jr., District Judge, Presiding

Argued and Submitted October 5, 2021
San Francisco, California

Before: THOMAS, Chief Judge, and CLIFTON and FRIEDLAND, Circuit Judges.

---

   *   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Plaintiffs-Appellants Estate of Tyler S. Rushing ("Rushing"), Scott K. Rushing, and Paula L. Rushing brought claims in the District Court arising from an encounter resulting in Rushing's death against Defendants-Appellees the City of Chico, the Chico Police Department, and Chico officers Scott Ruppel, Cedric Schwyzer, Alex Fliehr, and Jeremy Gagnebin (collectively the "City Defendants"); the County of Butte, the Butte County Sheriff's Department, and Butte County Deputy Sheriff Ian Dickerson (the "County Defendants"); and AG Private Protection, Inc., and its employee Edgar Sanchez (the "Security Defendants"). Plaintiffs challenge the District Court's grant of summary judgment, which we review de novo, on the federal and state claims (Claims 1-8) in favor of the individual City and County Defendants, on the state claims (Claims 4-8) in favor of the non-individual City and County Defendants, and on the state tort claims (Claims 6-8) in favor of the Security Defendants.[1] *See Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 777 (9th Cir. 2014) (en banc).

We may not affirm a grant of summary judgment if, when viewing the record, as we must, in the light most favorable to Plaintiffs, we conclude that "a

---

[1] As the District Court noted, Plaintiffs only oppose the grant of summary judgment in favor of the Security Defendants on Claims 6-8 "because discovery revealed that [the Security Defendants'] conduct does not qualify as state action" as required by Claims 1-5.

rational trier of fact could resolve a genuine issue of material fact in the nonmoving party's favor[.]" *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011). We conclude that such genuine issues of material fact remain that could lead a reasonable jury to find that Fliehr's tasering of Rushing violated a right of Rushing's. Because the District Court relied entirely on its erroneous holding that the officers' "reasonable behavior justifies granting each of their motions in their entirety on the merits," we vacate the District Court's grant of summary judgment in favor of the individual City Defendants on the federal and state claims (Claims 1-8) and the non-individual City Defendants on the state claims (Claims 4-8). We remand for the District Court to address in the first instance whether the individual City Defendants are protected by qualified immunity and which, if any, of the City Defendants other than Fliehr may be liable for the tasering. We affirm the District Court's grant of summary judgment in favor of Dickerson on the federal and state claims (Claims 1-8) and the non-individual County Defendants on the state claims

(Claims 4-8). Finally, we affirm the District Court's grant of summary judgment in favor of the Security Defendants on the state tort claims (Claims 6-8).[2]

1. Summary judgment should not have been granted in favor of the individual City Defendants on the federal and state claims (Claims 1-8) or the non-individual City Defendants on the state claims (Claims 4-8). Genuine disputes of material fact exist that could lead a reasonable jury, viewing the facts in the light most favorable to Plaintiffs, to conclude that Fliehr violated a right of Rushing's when he tasered Rushing in the back over one minute after Rushing fell face down on the floor after being shot twice by Ruppel. *See George v. Edholm*, 752 F.3d 1206, 1214 (9th Cir. 2014).

A genuine issue of material fact exists concerning the location of Rushing's right hand and his motionlessness after falling to the floor. The video shows that after Rushing was shot twice by Ruppel and fell to the floor, Rushing's right hand was extended away from his torso. At most, his right hand was partially concealed by a bathroom furnishing, which contradicts Fliehr's claim, restated by the District Court, that Rushing "fell face forward on the ground with his left arm out and his

---

[2] We grant Plaintiffs' Motion to Supplement the Record with the complete transcripts of the depositions of Fliehr and Ruppel. *See* Fed. R. App. P. 10(e) and 27. While the complete transcripts were not filed, they were provided as courtesy copies to the District Court per E.D. Cal. Local Rule 113(j), which only permits parties to file the pages cited in their pleadings and motions.

right arm underneath him." Similarly, the video conflicts, albeit less starkly, with Fliehr's claim that Rushing "flinch[ed]" and moved slightly after falling to the floor. Though not entirely clear, the video would permit a reasonable jury to conclude that Rushing remained motionless for over one minute before Fliehr tasered him in the back.

In light of these disputes, we turn to whether those disputes are "genuine disputes of material fact" that could lead a reasonable jury to find that the individual City Defendants violated a right of Rushing's. Applying the "objective reasonableness" standard, we hold that a reasonable jury could conclude that a right of Rushing's was violated by Fliehr's tasering of Rushing but could not conclude that a right was violated by the officers' conduct beforehand. *See Graham v. Connor*, 490 U.S. 386, 396 (1989).

First, taking the events in order, a reasonable jury could not find that the initial dog bite or Ruppel's first shot were unreasonable given the "threat of serious physical harm" that Rushing posed. Plaintiffs identify the key question governing the reasonableness of these uses of force: whether the officers "had an objectively reasonable basis for believing that [Rushing] posed a threat of serious physical harm[.]" *Orn v. City of Tacoma*, 949 F.3d 1167, 1174 (9th Cir. 2020). Plaintiffs argue that Rushing's "resistance was ineffectual" because he only wielded

"makeshift weapons," but concede that he used a porcelain shard of a broken toilet to attack Schwyzer. We conclude that Rushing posed a threat that was sufficient to justify Ruppel's first shot.

Second, a reasonable jury could not find Ruppel's second shot, which occurred just two seconds after his first shot, unreasonable. The "reasonableness" inquiry "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving[.]" *Graham*, 490 U.S. at 396-97. Here, the rapid succession of the first and second shots, which is undisputed and evidenced by the video, favors the officers.

Third, in contrast to Ruppel's first and second shots, a reasonable jury could find Fliehr's tasering of Rushing unreasonable. We have held that a taser in dart mode "constitute[s] an intermediate, significant level of force," *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010), that can be unreasonable when applied to a suspect who is already "rendered helpless," *LaLonde v. County of Riverside*, 204 F.3d 947, 961 (9th Cir. 2000), or is "adequately subdued," *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1170 (9th Cir. 2013). Our analysis of reasonableness in *Cortesluna v. Leon* provides a useful comparison and was not addressed by the Supreme Court's recent reversal solely on the issue of whether

the officer in *Cortesluna* violated clearly established law and thus is entitled to qualified immunity. 979 F.3d 645 (9th Cir. 2020), *rev'd on qualified immunity grounds sub nom. Rivas-Villegas v. Cortesluna*, No. 20-1539, 2021 WL 4822662, at *1 (U.S. Oct. 18, 2021). In *Cortesluna*, we held that, "[t]aking Plaintiff's version of the facts as true," an officer's use of intermediate force was unreasonable in a case in which the officer "lean[ed] too hard on [the suspect's] back" while the suspect was prone, had been previously injured by other officers, and was "not resisting" and "no longer posed a risk." *Id.* at 653. The facts here are even more suggestive that Fliehr's tasering was unreasonable, given that the suspect in *Cortesluna* was shot by beanbag rounds and was undisputedly moving while "lying face down on the ground." *Id.*

In *Jones v. Las Vegas Metro. Police Dep't*, we found "a triable issue of fact as to whether the officers were reasonable in the degree of force they deployed" after the suspect's body "'locked up' as a result of repeated taser shocks" while "he had no weapon and was making no threatening sounds or gestures" and "was prone and surrounded by multiple officers." 873 F.3d 1123, 1130-31 (9th Cir. 2017). We held in *Guy v. City of San Diego*:

> [E]ven when police officers reasonably must take forceful actions in response to an incident, and even when such forceful actions are permissible

at first, if the officers go too far by unnecessarily inflicting force and pain after a person is subdued, then the force, unnecessary in part of the action, can still be considered excessive.

608 F.3d 582, 589 (9th Cir. 2010). A reasonable jury could find that the officers in this case similarly went "too far." *Id.*

Although the District Court did not reach qualified immunity,[3] we have discretion to decide "in the first instance" the legal question whether the "asserted federal right was clearly established" at the time of the offense. *DeBoer v. Pennington*, 206 F.3d 857, 964 (9th Cir. 2000) (quoting *Elder v. Holloway*, 510 U.S. 510, 516 (1993)) (denying qualified immunity in the first instance), *vacated on other grounds sub nom. City of Bellingham v. DeBoer*, 532 U.S. 992 (2001); *accord Mendoza v. Block*, 27 F.3d 1357, 1360 (9th Cir. 1994) ("Because this [qualified immunity] inquiry involves a question of law, there is no reason we cannot, in our discretion, decide it in the first instance.").

We conclude that, construing the facts in the light most favorable to Plaintiffs, "a reasonable officer would have had fair notice that the force employed

---

[3] Although Prong 2 was not reached, the District Court was correct in holding that the individual City and County Defendants properly asserted the defense of qualified immunity by affirmatively stating the defense in a responsive pleading as required by Federal Rule of Civil Procedure 8(c)(1).

was unlawful." *Boyd v. Benton County*, 372 F.3d 773, 781 (9th Cir. 2004). As our citations to *Bryan*, *LaLonde*, *Johnson*, *Jones*, and *Guy* make clear, it was clearly established at the time of these events that an officer has a significantly diminished interest in even the use of an intermediate level of force, such as a taser, after a suspect has been rendered helpless. In *Jones*, for example, we denied qualified immunity to an officer who applied "continuous, repeated, and simultaneous tasings" to a suspect who posed no "immediate or significant risk of serious injury or death to the officers." *Jones*, 873 F.3d at 1132 (noting that suspect was lying prone, no longer resisting, and surrounded by officers); *see also Deorle v. Rutherford*, 272 F.3d 1272, 1285 (9th Cir. 2001) (holding use of less-than-lethal force unreasonable where suspect presented "no objectively reasonable threat").

If the jury concluded factually that Rushing did not pose an immediate threat because after being shot three times he laid still, face down, with his hands visible, in a pool of his own blood, any reasonable officer should have known that repeated tasings of Rushing violated clearly established law on excessive force. Accordingly, we reverse the District Court's grant of summary judgment in favor of Officer Fliehr on the federal and state claims (Claims 1-8). We vacate the District Court's grant of summary judgment to the remaining individual City Defendants on the federal and state claims (Claims 1-8) and the non-individual

City Defendants on the state claims (Claims 4-8). We remand for the District Court to address in the first instance which, if any, of the City Defendants other than Fliehr may be liable for Fliehr's tasering of Rushing. The issue of liability should be addressed in the first instance by the District Court because it turns on the facts of the particular City Defendants' roles—for example, who heard Fliehr announce his intention to use the taser before deploying it and Ruppel's being in command of the operation. Our ruling does not foreclose future motions for summary judgment brought by the City Defendants other than Fliehr.

2. We affirm the District Court's grant of summary judgment in favor of the County Defendants. Even when viewing the facts in the light most favorable to Plaintiffs, a reasonable jury could not conclude that Dickerson's ordering of his dog to bite Rushing was unreasonable. Indeed, it is undisputed that Dickerson directed the dog to bite Rushing only *after* Rushing struck and cut Officer Schwyzer with a porcelain shard. Moreover, a reasonable jury could not conclude that Dickerson was an "integral participant" in Fliehr's tasering of Rushing merely because Dickerson "assisted and acquiesced at various points" to the officers' common plan. *See Nicholson v. City of Los Angeles*, 935 F.3d 685, 691 (9th Cir. 2019) (ruling that when an officer is not the "sole party responsible for a constitutional violation," § 1983 liability is based on his "integral participation").

Plaintiffs cannot prevail against Dickerson on the federal and state claims (Claims 1-8) or the non-individual County Defendants on the state claims (Claims 4-8), because those claims require that, upon viewing the facts in the light most favorable to Plaintiffs, we conclude that a reasonable jury could find Dickerson's conduct unreasonable.

    3. We affirm the District Court's grant of summary judgment in favor of the Security Defendants on Claims 6-8—the only claims that Plaintiffs challenge on appeal with regard to the Security Defendants. Plaintiffs have not established that Sanchez's unholstering of his firearm made his subsequent use of the firearm in self-defense unreasonable. We agree with the District Court's ruling that, even when viewing the facts in the light most favorable to Plaintiffs, a reasonable jury could not find Sanchez's conduct unreasonable because he "did not shoot wildly or without provocation" but instead shot "only after [he] had been ambushed [and] stabbed at least twice[.]" Sanchez cannot be liable based on his "integral participation" in the subsequent uses of force inside the building, for which he was not present. Plaintiffs cannot prevail against the Security Defendants on Claims 6-8, which all, at minimum, require that a reasonable jury could find that Sanchez acted unreasonably.

With regard to the County Defendants and the Security Defendants, costs are taxed against Plaintiffs and in favor of those defendants. With regard to the City Defendants, Plaintiffs and those defendants shall bear their own costs.

**REVERSED IN PART, AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**