UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF TYLER S. RUSHING, et al., <br><br> Plaintiffs, <br><br> v. <br><br> AG PRIVATE PROTECTION, INC., et al., <br><br> Defendants. | No. 2:18-cv-01692-MCE-AC <br><br> **MEMORANDUM AND ORDER** |

By way of this action, Plaintiffs seek to recover for injuries sustained as a result of a fatal altercation between Tyler S. Rushing ("Decedent" or "Rushing")[1] and the following groups of Defendants: (1) AG Security Protection, Inc., and AG security guard and supervisor Edgar Sanchez (collectively the "Security Defendants"); (2) the City of Chico, the Chico Police Department, Chico PD Sergeant Scott Ruppel, and Officers Cedric Schwyzer, Alex Fliehr, and Jeremy Gagnebin (collectively the "City Defendants"); and (3) the County of Butte, the Butte County Sheriff's Office, and Deputy Sheriff Ian Dickerson (collectively the "County Defendants"). On July 22, 2020, the Court entered judgment in favor of Defendants, after which Plaintiffs appealed. The Ninth Circuit affirmed in part, vacated in part, and remanded the case to this Court. Presently before the Court is a

---

[1] Plaintiffs are Decedent's estate and his parents, Scott K. Rushing and Paula L. Rushing.

1

1  new Motion for Summary Judgment filed by the City Defendants.  For the following
2  reasons, that Motion is GRANTED in part and DENIED in part.[2]

### STANDARD

The Federal Rules of Civil Procedure[3] provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  Celotex, 477 U.S. at 325.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment.  See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378–79 (C.D. Cal. 1995).  The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment.  See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323.  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co., Ltd. v.

---

[2] Because oral argument would not have been of material assistance, the Court declined to set a hearing date and decides this matter on the briefs.  E.D. Local Rule 230(g).

[3] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure.

Zenith Radio Corp., 475 U.S. 574, 586–87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288–89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251–52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

3

obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## ANALYSIS[4]

The appellate court primarily agreed with this Court's conclusions in granting all Defendants' original motions for summary judgment. Contrary to this Court, however, that court concluded that "genuine issues of material fact remain that could lead a reasonable jury to find that Fliehr's tasering of Rushing violated a right of Rushing's." ECF No. 77 at 3. To the extent this Court concluded otherwise, its decision was reversed.

More specifically the appellate panel held that "genuine disputes of material fact exist that could lead a reasonable jury, viewing the facts in the light most favorable to Plaintiffs, to conclude that Fliehr violated a right of Rushing's when he tasered Rushing in the back over one minute after Rushing fell face down on the floor after being shot twice by Ruppel." Id. at 4. That court thus held "that a reasonable jury could conclude that a right of Rushing's was violated by Fliehr's tasering of Rushing but could not conclude that a right was violated by the officers' conduct beforehand." Id. at 5.

The panel went on to reason that although this Court did not reach the issue of qualified immunity, the appellate court had the discretion to address "whether the asserted federal right was clearly established at the time of the offense." Id. at 8 (internal quotation marks omitted). The panel answered that question in the affirmative:

> We conclude that, construing the facts in the light most favorable to Plaintiffs, "a reasonable officer would have had fair notice that the force employed was unlawful." Boyd v. Benton County, 372 F.3d 773, 781 (9th Cir. 2004). As our [precedents] make clear, it was clearly established at the time

---

[4] Because the parties and the Court are intimately familiar with the facts of this case, and they have been addressed by the appellate court as well, the Court recounts only those necessary to the instant motion in conjunction with its current analysis here.

4

> of these events that an officer has a significantly diminished interest in even the use of an intermediate level of force, such as a taser, after a suspect has been rendered helpless . . . .
>
> If the jury concluded factually that Rushing did not pose an immediate threat because after being shot three times he laid still, face down, with his hands visible, in a pool of his own blood, any reasonable officer should have known that repeated tasings of Rushing violated clearly established law on excessive force. Accordingly, we reverse the District Court's grant of summary judgment in favor of Officer Fliehr on the federal and state claims (Claims 1-8). We vacate the District Court's grant of summary judgment to the remaining individual City Defendants on the federal and state claims (Claims 1-8) and the non-individual City Defendants on the state claims (Claims 4-8). We remand for the District Court to address in the first instance which, if any, of the City Defendants other than Fliehr may be liable for Fliehr's tasering of Rushing. The issue of liability should be addressed in the first instance by the District Court because it turns on the facts of the particular City Defendants' roles—for example, who heard Fliehr announce his intention to use the taser before deploying it and Ruppel's being in command of the operation. Our ruling does not foreclose future motions for summary judgment brought by the City Defendants other than Fliehr.

Id. at 8-10.[5] City Defendants nonetheless contend now that Fliehr is entitled judgment in his favor. This Court disagrees.

### A. The Ninth Circuit already determined Flier was not entitled to qualified immunity for tasering Decedent and reversed summary judgment as to all claims directed at him.

The City Defendants' current Motion for Summary Judgment misses the mark with respect to their initial Fourth Amendment arguments. Indeed, the City Defendants lead off by arguing that "Plaintiffs' Fourth Amendment Claim for unreasonable force is barred by qualified immunity." City Defs.' Mot., ECF No. 84, at 17. They elaborate:

> Because the Ninth Circuit determined that a genuine issue of material fact exists as to whether Rushing's constitutional rights were violated with respect to the use of the TASER, the Chico Defendants confine their qualified immunity analysis to the question of whether the law was clearly established as of the date of this incident so as to impart on Fliehr that a single deployment of the TASER, in the interest of officer safety, to allow Rushing to be taken into custody would violate Rushing's constitutional rights. The Chico Defendants submit that it was not. Alternatively, the use of the TASER was, at a bare

---

[5] This Court's decision was affirmed in all other respects. The Security Defendants and the County Defendants are thus no longer parties to this case.

> minimum, the result of a reasonable mistake as to whether Rushing continued to pose a threat to officer safety because he was still moving after he fell to the bathroom floor. In either event, qualified immunity bars Plaintiffs' constitutional claims.

Id.

But this question was already asked and answered to the contrary at the circuit. That panel decisively concluded that a reasonable trier of fact could find the facts in Plaintiffs' favor with regard to the circumstances of Decedent's tasering. If so, the panel concluded, not only would Flier's behavior have violated Decedent's constitutional rights, but such rights were clearly established at the time. The panel made clear that only future motions for summary judgment by Defendants "other than Fliehr" should be entertained on these issues. Accordingly, City Defendants' current argument as to Fliehr's qualified immunity is off the table. This Court and the parties are bound by the appellate court's holdings. Their argument is thus rejected, and to the extent Fliehr moves for summary judgment, with one exception explained with respect to Plaintiffs' state causes of action below, his motion is DENIED.

**B.    City Defendants' challenges to Plaintiffs' federal claims.**

City Defendants contend that Plaintiffs' claims for denial of familial association under the First and Fourteenth Amendments fail because Plaintiffs cannot establish conduct with a purpose to harm without regard to legitimate law enforcement objectives and qualified immunity bars the claim. Id. at 22.[6] According to City Defendants:

> There are absolutely no admissible facts to suggest that Fliehr deployed the TASER merely to "teach Rushing a lesson" or to "get even" with him for failing to come out of the bathroom, factors which have been held not to shield officers from such a claim. See, e.g., Davis v. Township of Hillside (3rd Cir. 1999) 190 F.3d 167, 172. Indeed, Fliehr made clear in the moment that he decided to deploy the TASER in the interest of officer safety based on his observations that Rushing was still moving and not handcuffed. That deployment was a direct response to the deadly force used by Rushing, the threat that Rushing

---

[6] To the extent City Defendants argue that Plaintiffs' First Amendment claim is duplicative of their Fourteenth Amendment claim, that argument is rejected. The Ninth Circuit recognizes claims affecting the right to familial association separately under both provisions. See Kaur v. City of Lodi, 263 F. Supp. 3d 947, 973-75 (E.D. Cal. 2017).

6

> posed to the officers throughout the incident, and the perception that the threat had not yet been averted. Additionally, the qualified immunity analysis above applies equally to Plaintiffs' Fourteenth Amendment claim. As such, the undisputed facts of this case warrant adjudication of the claim in favor of the Chico Officers.

Id. at 23. Again, though, this argument has already been rejected by the Ninth Circuit as to Fliehr as explained above. The appellate court already determined that a reasonable trier of fact could determine that Decedent posed no threat at the time he was tased and that Fliehr's testimony as to his own observations might be rejected. If that is the case, the jury could conclude Flier tased Decedent with the intent to harm him and without any legitimate law enforcement objective. For the reasons set forth above, qualified immunity is unavailable at this time as well. Since City Defendants' Motion as to these claims runs contrary to the appellate disposition, it must be rejected here.

In addition, City Defendants take the position that the individual City Defendants other than Fliehr cannot be held liable for Plaintiffs' constitutional claims because they had no duty or opportunity to intercede prior to Decedent being tasered. As is relevant here, City Defendants argue that:

> In this case, Ruppel, Schwyzer, and Gagnebin had no duty to intercede to prevent Fliehr from deploying the TASER because, as explained above, it was not clearly established as of July 23, 2017, that a reasonable officer confronted with this specific factual scenario would have believed that attempting to take Rushing into custody through the single deployment of a TASER in the interest of officer safety violated Rushing's constitutional rights. In other words, Ruppel, Schwyzer, and Gagnebin were not on notice that a constitutional violation was occurring in the first place and, therefore, had no duty to intercede to prevent an unknown constitutional violation. Additionally, solely with respect to Ruppel, he did not have an opportunity to intercede in any event because he was removed from the bathroom for medical attention after being stabbed in the neck and was not in the building when Fliehr deployed the TASER. UF ¶ 54. As such, he had no "realistic opportunity" to intercede and cannot be held liable on a theory of failure to intercede.

Id. at 24-25. City Defendants' argument as to whether the applicable law was clearly established at the time is again rejected because it requires this Court to ignore the Ninth Circuit panel's qualified immunity decision.

Furthermore, although Ruppel was removed from the building, City Defendants do not adequately address what, if any, impact Ruppel had on Fliehr's decision to deploy the taser by way of his command of the operation. The Ninth Circuit specifically discussed that as a factor for this Court to address on remand, and it is unclear what, if any, role Ruppel played in the ultimate decision to tase Decedent or in the events leading to that point. City Defendants' Motion on this point is thus DENIED.

### C. City Defendants' challenges to Plaintiffs' state claims.

City Defendants next contend Plaintiffs cannot state an excessive force claim under the California Constitution because Article I, Section 13, does not provide a private right of action to civil litigants. This Court previously agreed in its Memorandum and Order addressing the original motions for summary judgment:

> [T]he City Defendants contend that Plaintiffs' California constitutional claim necessarily fails because Article I, § 13 does not provide a private cause of action. "Federal district courts in California are split on this question." Estate of Osuna v. Cty. of Stanislaus, 392 F. Supp. 3d 1162, 1178 (E.D. Cal. 2019). This Court has previously held that no private cause of action is conferred by this section. See Cabral v. Cty. of Glenn, 624 F. Supp. 2d 1184, 1196 (E.D. Cal. 2009); Buzayan v. City of Davis Police Dept., Case No. 2:06-cv-01576-MCE-DAD, 2007 WL 2288334, at *8-9 (E.D. Cal. Aug. 8, 2007). The City Defendants' Motion for Summary Judgment on this claim is thus GRANTED regardless of the resolution of the use of force questions

ECF No. 62 at 13 n.10. This holding remains sound today, and City Defendants' Motion is again GRANTED on this ground.[7]

Finally, the City Defendants argue that they are all immune from liability against Plaintiffs' state law claims under California Penal Code § 835a(d), which provides:

> A peace officer who makes or attempts to make an arrest need not retreat or desist from their efforts by reason of the

---

[7] The only issue in this Court's analysis today is as to Fliehr because the Ninth Circuit did not address this issue on appeal, but nonetheless reversed summary judgment as to Fliehr in its entirety and indicated that this Court could entertain summary judgment motions from only the remaining Defendants. It would obviously produce an absurd result, however, if this claim was permitted to proceed against Fliehr alone when the legal question was not addressed by the panel. Accordingly, the Court interprets the panel's disposition to preclude Fliehr only from challenging the reasonableness of his conduct and the clearly established nature of the applicable law, but not as preventing him from renewing this legal challenge to the state constitutional claim. Fliehr's Motion is thus GRANTED on this issue as well.

8

> resistance or threatened resistance of the person being arrested.  A peace officer shall not be deemed an aggressor or lose the right to self-defense by the use of objectively reasonable force in compliance with subdivisions (b) and (c) to effect the arrest or to prevent escape or to overcome resistance.  For the purposes of this subdivision, "retreat" does not mean tactical repositioning or other deescalation tactics.

According to City Defendants, "the single deployment of the TASER was in the sole interest of officer safety." ECF No. 84 at 26.  Of course, this again contradicts the appellate court's decision that, construing all facts in Plaintiffs' favor, a reasonable jury could conclude Decedent posed no threat at the time he was tased.  If that is the case, the individual City Defendants are not entitled to immunity.  See Robinson v. Solano Cnty., 278 F.3d 1007, 1016 (9th Cir. 2002) ("California denies immunity to police officers who use excessive force in arresting a suspect.").  Since the entity City Defendants' claim for immunity is derivative of the individual City Defendants, it fails as well.  See Cal. Gov't Code § 815.2 ("[A] public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability.").  City Defendants' Motion is thus DENIED as to each of the remaining state law claims.

## CONCLUSION

For the reasons set forth above, City Defendants' Motion for Summary Judgment, ECF No. 84, is GRANTED in part and DENIED in part.  It is GRANTED as to Plaintiffs' Fourth Cause of Action for unreasonable force under Article I, § 13 of the California Constitution, and it is DENIED in all other respects.

IT IS SO ORDERED.

Dated: July 14, 2023

_____
MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE