1

2

3

4

5

6

7

8                             UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ESTATE OF TYLER S. RUSHING, et al.,          No.  2:18-cv-01692-DAD-AC

12                        Plaintiffs,

13          v.                                     FINAL PRETRIAL ORDER

14   AG PRIVATE PROTECTION, INC., et
     al.,
15
                         Defendants.[1]
16

17          On August 6, 2024, the court conducted a final pretrial conference in this case.  Attorneys

18   Mark E. Merin, Paul Hajime Masuhara, and Robert Lynn Chalfant appeared by video as counsel

19   for plaintiffs; attorney Sharon Medellin appeared by video as counsel for defendants.  Having

20   considered the parties' objections to the tentative pretrial order, the court issues this final pretrial

21   order which will govern the trial of this action.

22          Plaintiffs Estate of Tyler S. Rushing, Scott K. Rushing, and Paula L. Rushing bring this

23   civil rights action against defendants City of Chico, Chico Police Department, Scott Ruppel,

24   Cedric Schwyzer, Alex Fliehr, and Jeremy Gagnebin ("defendants"), with claims arising under 42

25   ───────────────
     [1]  Although the docket in this action reflects eleven defendants, there are no remaining claims
26   pending against defendants AG Private Protection, Inc., Edgar Sanchez, County of Butte, Butte
     County Sheriff's Office, and Ian Dickerson.  Accordingly, the court will direct the Clerk of the
27   Court to update the docket to reflect that those defendants were terminated as of December 22,
     2021, the date of the Ninth Circuit mandate affirming the previously assigned district judge's
28   order on summary judgment as to these defendants.  (Doc. No. 78.)

                                                    1

1   U.S.C § 1983 for unreasonable use of force in violation of the Fourth and Fourteenth

2   Amendments, interference with familial association in violation of the Fourteenth Amendment,

3   interference with the right of association in violation of the First and Fourteenth Amendments, as

4   well as state law claims for unreasonable use of force in violation of the Bane Act and for

5   assault/battery, negligence, and wrongful death.[2]

6   I.    JURISDICTION/VENUE

7          Jurisdiction is predicated on 28 U.S.C. §§ 1331, 1343(a)(3), and 1367. Jurisdiction is not

8   contested.

9          Venue is proper pursuant to 28 U.S.C. § 1391(b). Venue is not contested.

10

---

11  [2]  In their complaint, plaintiffs also brought a claim for use of excessive and unreasonable force in
    violation of Article I, § 13 of the California Constitution (claim four). The previously assigned
12  district court judge initially granted summary judgment in favor of all defendants on this claim,
    finding both that each defendant "acted entirely reasonably" and that there is no private cause of
13  action for damages conferred by Article I, § 13 of the California Constitution. (Doc. No. 62 at
    13.) Subsequently, the Ninth Circuit held that summary judgment should not have been granted
14  as to any of the City defendants because a reasonable jury could conclude that Officer Fliehr
    had been shot twice by Officer Ruppel. (Doc. No. 77 at 4.) The panel noted that their ruling did
15  "not foreclose future motions for summary judgment brought by the City Defendants other than
    Fliehr" as liability may turn on the particular defendants' roles. (*Id*. at 10.) In the previously
16  assigned district judge's second order on summary judgment, the court "interpret[ed] the panel's
    disposition to preclude Fliehr only from challenging the reasonableness of his conduct and the
17  clearly established nature of the applicable law, but not as preventing him from renewing this
    legal challenge to the state constitutional claim." (Doc. No. 92 at 8.) The district judge so
18  interpreted the Ninth Circuit's mandate to avoid the "absurd result" of claim four "proceed[ing]
    against Fliehr alone when the legal question was not addressed by the panel." Accordingly, the
19  previously assigned district judge again granted summary judgment in favor of all remaining
    defendants as to plaintiffs' claim four, finding again that Article I, § 13 of the California
20  Constitution does not provide a private right of action for damages. (*Id*.) As discussed at the pre-
    trial conference, there is now a dispute between the parties as to whether claim four still remains
21  extant. Plaintiffs argue that the previously assigned district judge disregarded the Ninth Circuit's
    mandate reversing dismissal of the claim and thus exceeded his discretion. (Doc. No. 111 at 11.)
22  However, no motion for reconsideration of the district court's second order granting summary
    judgment in favor of all defendants as to this claim was ever filed. The time in which to do so has
23  since elapsed and law and motion in this case is closed under the court's scheduling order. At this
    time, the court's position is that this claim did not survive summary judgment and does not
24  remain for trial. If plaintiffs wish to address this issue in more detail, they are not precluded from
    doing so by way of a motion in limine. The undersigned expresses no opinion in this order as to
25  the scope of the Ninth Circuit's mandate or the existence of a private right of action for damages
    under Article I, § 13 of the California Constitution.

26

27

28

II.      JURY

Both parties have demanded a jury trial.  The jury will consist of eight jurors.[3]

III.     UNDISPUTED FACTS

1.      Scott Rushing and Paula Rushing are the parents of the decedent, Tyler Rushing.

2.      Tyler Rushing was 34 years old at the time of his death.

3.      On July 23–24, 2017, Scott Ruppel, Cedric Schwyzer, Alex Fliehr, and Jeremy Gagnebin were law enforcement officers employed by the City of Chico and Chico Police Department, acting within the scope of employment and under color of state law.

4.      The incident giving rise to this action occurred on July 23–24, 2017 at the Mid Valley Title Company in Chico, CA.

5.      Tyler Rushing encountered officers Scott Ruppel, Cedric Schwyzer, Alex Fliehr, and Jeremy Gagnebin at the scene of where the incident occurred.

6.      Officer Scott Ruppel shot Tyler Rushing twice with his department-issued firearm.

7.      Officer Alex Fliehr deployed his department-issued taser in dart-mode at Tyler Rushing.

8.      Tyler Rushing died following the encounter with officers Scott Ruppel, Cedric Schwyzer, Alex Fliehr, and Jeremy Gagnebin.

IV.     DISPUTED FACTUAL ISSUES

Despite being provided three opportunities to do so, the parties did not cooperate to provide a single list of disputed material facts.  Instead, they have each now provided their own positions as to what the disputed material facts are.  (Doc. No. 114 at 2–3.)  In the court's view, many of the parties' "disputed material facts" actually address legal issues, are not disputed issues of fact at all, and should not be listed in this section of the Final Pretrial Order.  However, rather than give the parties a fourth opportunity to amend this section, the court will instead merely

---

[3]  As discussed with counsel during the final pretrial conference, the court may elect to seat a larger jury if deemed appropriate in light of public health conditions at the time the trial of this action commences.  In addition, counsel are advised that the undersigned is currently enforcing a mandatory masking policy in his courtroom and is likely to continue to do so as long as the test positivity rate for COVID-19 in California remains above 5%.

recite the parties' positions below.  Neither party has expressed any view as to the other party's position.

Plaintiffs' Position re Disputed Factual Issues:

1.      Whether Alex Fliehr used excessive force by deploying a taser against Tyler Rushing.

2.      Whether Cedric Schwyzer and/or Jeremy Gagnebin were integral participants, or failed to intervene, in Alex Fliehr's deployment of a taser against Tyler Rushing.

3.      Whether Scott Ruppel's supervision or control over the actions of Alex Fliehr, Cedric Schwyzer, and/or Jeremy Gagnebin caused the use of excessive force against Tyler Rushing.

4.      Whether Scott Ruppel, Cedric Schwyzer, Alex Fliehr, and/or Jeremy Gagnebin acted with deliberate indifference to the violation of Tyler Rushing's constitutional rights.

5.      Whether Scott Ruppel, Cedric Schwyzer, Alex Fliehr, and/or Jeremy Gagnebin acted with specific intent to the violation of Tyler Rushing's constitutional rights.

6.      Whether Scott Ruppel, Cedric Schwyzer, and/or Jeremy Gagnebin aided-and-abetted Alex Fliehr's deployment of a taser against Tyler Rushing.

7.      Whether Scott Ruppel, Cedric Schwyzer, Alex Fliehr, and/or Jeremy Gagnebin breached a duty of care which harmed Tyler Rushing, including through:

      i.   lack of ordinary care;

     ii.   violation of a constitutional right;

    iii.   non-compliance with California Peace Officer Standards and Training ("POST"); and/or

    iv.   non-compliance with Chico Police Department policies, training, and procedures.

8.      Whether Scott Ruppel, Cedric Schwyzer, Alex Fliehr, and/or Jeremy Gagnebin caused Tyler Rushing's death.

9.      If liability is established, the amount of hedonic damages owed.

10.      If liability is established, the amount of wrongful-death damages owed.

11.     If liability is established, the amount of statutory penalties and/or treble damages owed.

12.     If liability is established and punitive damages awarded, the amount of punitive damages owed.

Defendants' Position re Disputed Factual Issues:

1.     Whether a reasonable officer in Alex Fliehr's position could reasonably believe that Tyler Rushing continued to pose a threat to officer safety when he deployed the taser.

2.     Whether the deployment of the taser was objectively reasonable.

3.     Whether Scott Ruppel supervised and/or controlled the scene.

4.     Whether Alex Fliehr acted with a purpose to harm Tyler Rushing without regard to legitimate law enforcement objectives.

5.     Whether Cedric Schwyzer, and/or Jeremy Gagnebin had a duty to intercede to prevent deployment of the taser.

6.     If Tyler Rushing's constitutional rights were violated, whether that violation was the result of reasonable mistake.

V.     DISPUTED EVIDENTIARY ISSUES/MOTIONS IN LIMINE

The parties have not yet filed motions *in limine*.  The court does not encourage the filing of motions *in limine* unless they are addressed to issues that can realistically be resolved by the court prior to trial and without reference to the other evidence which will be introduced by the parties at trial.  The parties anticipate filing the motions *in limine* listed below.  Any motions *in limine* counsel elects to file shall be filed no later than **21 days before trial**.  Opposition shall be filed no later than **14 days before trial** and any replies shall be filed no later than **10 days before trial**.  Upon receipt of any opposition briefs, the court will notify the parties if it will hear argument on any motions *in limine* prior to the first day of trial.

Plaintiffs' Motions *in Limine*

1.     Motion to exclude defendants' experts' reports.

2.     Motion to exclude Butte County District Attorney's officer-involved shooting investigation's findings and conclusions.

3.      Motion to exclude officer awards, accolades, and commendations.

4.      Motion to exclude weapons in courtroom.

Defendants' Motions *in Limine*

7.      Motion to exclude plaintiffs' expert witness reports.

8.      Motion to exclude evidence of use of force by the named Chico officers during incidents other than the incident involving Rushing.

9.      Motion to exclude a post-incident PowerPoint presentation prepared by a now retired member of the Chico Police Department.

10.    Motion to exclude evidence disputing the reasonableness of the Chico Officers' conduct prior to the tasering of Rushing, including the shots fired by Ruppel.

11.    Motion to exclude evidence of a history of mental illness suffered by Rushing.

12.    Motion to exclude evidence of Rushing's lack of criminal history.

13.    Motion to exclude evidence of Chico Police Department policies and POST Learning Domains unrelated to deployment of the taser.

## VI.    SPECIAL FACTUAL INFORMATION

Pursuant to Local Rule 281(b)(6), the parties provided special factual information that pertains to this action, which has been incorporated into the above "Undisputed Facts" section of this Final Pretrial Order.

## VII.    RELIEF SOUGHT

1.      Plaintiff Estate of Tyler Rushing, through successor-in-interest Scott Rushing and Paula Rushing, seeks compensatory, nominal, and punitive damages and statutory penalties.

2.      Plaintiffs Scott Rushing and Paula Rushing seek compensatory, nominal, and punitive damages and statutory penalties.

3.      Plaintiffs also seek to recover attorneys' fees and costs.

## VIII.    POINTS OF LAW

The claims and defenses asserted in this action arise under both federal and state law. Plaintiffs maintain seven claims which survive following the court's last order addressing defendants' motion for summary judgment.  (*See* Doc. No. 92.)  Three of those claims are

6

brought by plaintiff Estate of Tyler Rushing against all defendants. One of those claims is brought by plaintiff Estate of Tyler Rushing against the individual defendants. One of those claims is brought by plaintiffs Scott Rushing and Paula Rushing against all defendants. Two of those claims are brought by plaintiffs Scott Rushing and Paula Rushing against the individual defendants. Based upon these surviving claims, the points of law in this case are:

1.   The elements of, standards for, and burden of proof in a 42 U.S.C. § 1983 claim of unreasonable use of force in violation of the Fourth and Fourteenth Amendments.

2.   The elements of, standards for, and burden of proof in a § 1983 claim of interference with familial association in violation of the Fourteenth Amendment.

3.   The elements of, standards for, and burden of proof in a § 1983 claim of interference with the right of association in violation of the First and Fourteenth Amendment.

4.   The elements of, standards for, and burden of proof in a claim of unreasonable force in violation of the Bane Act, California Civil Code § 52.1.

5.   The elements of, standards for, and burden of proof in an assault/battery claim.

6.   The elements of, standards for, and burden of proof in a negligence claim.

7.   The elements of, standards for, and burden of proof in a wrongful death claim.

8.   The elements of, standards for, and burden of proof in an affirmative defense of qualified immunity.[4]

9.   The elements of, standards for, and burden of proof as to the affirmative defense of failure to state a cause of action.

10.  The elements of, standards for, and burden of proof as to the affirmative defense of no duty to intercede.

11.  The elements of, standards for, and burden of proof as to the affirmative defense of self-defense/defense of others.

---

[4] Although this and other affirmative defenses have been listed in the joint pretrial statement the court is skeptical that they all remain viable affirmative defenses in connection with the trial of this action, especially in light of the limited nature of plaintiffs' remaining claims following the Ninth Circuit's ruling and the pretrial litigation in this case.

12.  The elements of, standards for, and burden of proof as to the affirmative defense of privilege.

13.  The elements of, standards for, and burden of proof as to the affirmative defense of no vicarious liability.

14.  The elements of, standards for, and burden of proof as to the affirmative defense of comparative negligence.

Trial briefs addressing the points of law implicated by plaintiffs' remaining claims shall be filed with this court no later than **7 days before trial** in accordance with Local Rule 285.

ANY CAUSES OF ACTION OR AFFIRMATIVE DEFENSES NOT EXPLICITLY ASSERTED IN THE PRETRIAL ORDER UNDER POINTS OF LAW AT THE TIME IT BECOMES FINAL ARE DISMISSED, AND DEEMED WAIVED.

IX.   <u>ABANDONED ISSUES</u>

All affirmative defenses not identified above in the "Points of Law" section.

X.   <u>WITNESSES</u>

Plaintiffs' witnesses shall be those listed in **Attachment A**.  Defendants' witnesses shall be those listed in **Attachment B**.  Each party may call any witnesses designated by the other.

A.   **The court does not allow undisclosed witnesses to be called for any purpose, <u>including impeachment or rebuttal</u>, unless they meet the following criteria:**

(1)  The party offering the witness demonstrates that the witness is for the purpose of rebutting evidence that could not be reasonably anticipated at the pretrial conference, or

(2)  The witness was discovered after the pretrial conference and the proffering party makes the showing required in paragraph B, below.

B.   Upon the post pretrial discovery of any witness a party wishes to present at trial, the party shall promptly inform the court and opposing parties of the existence of the unlisted witnesses by filing a notice on the docket so the court may consider whether the witnesses shall be permitted to testify at trial.  The witnesses will not be permitted unless:

8

(1)     The witness could not reasonably have been discovered prior to the discovery cutoff;

(2)     The court and opposing parties were promptly notified upon discovery of the witness;

(3)     If time permitted, the party proffered the witness for deposition; and

(4)     If time did not permit, a reasonable summary of the witness's testimony was provided to opposing parties.

XI.    <u>EXHIBITS, SCHEDULES, AND SUMMARIES</u>

Joint exhibits are listed in **Attachment C**.  Plaintiffs' exhibits are listed in **Attachment D**.  Defendants' exhibits are listed in **Attachment E**.  No exhibit shall be marked with or entered into evidence under multiple exhibit numbers, and the parties are hereby directed to meet and confer for the purpose of designating joint exhibits and to provide a list of joint exhibits.  All exhibits must be pre-marked as discussed below.  At trial, joint exhibits shall be identified as JX and listed numerically, e.g., JX-1, JX-2.  Plaintiffs' exhibits shall be listed numerically, and defendants' exhibits shall be listed alphabetically.

The parties must prepare three (3) separate exhibit binders for use by the court at trial, with a side tab identifying each exhibit in accordance with the specifications above.  Each binder shall have an identification label on the front and spine.  The parties must exchange exhibits no later than **28 days before trial**.  Any objections to exhibits are due no later than **14 days before trial**.  The final exhibits are due **the Thursday before the trial date.**  In making any objection, the party is to set forth the grounds for the objection.  As to each exhibit which is not objected to, no further foundation will be required for it to be received into evidence, if offered.

**The court does not allow the use of undisclosed exhibits for any purpose, <u>including impeachment or rebuttal</u>, unless they meet the following criteria:**

A.     The court will not admit exhibits other than those identified on the exhibit lists referenced above unless:

/////

/////

9

       (1)    The party proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence that could not have been reasonably anticipated, or

       (2)    The exhibit was discovered after the issuance of this order and the proffering party makes the showing required in paragraph B, below.

    B.    Upon the discovery of exhibits after the discovery cutoff, a party shall promptly inform the court and opposing parties of the existence of such exhibits by filing a notice on the docket so that the court may consider their admissibility at trial.  The exhibits will not be received unless the proffering party demonstrates:

       (1)    The exhibits could not reasonably have been discovered earlier;

       (2)    The court and the opposing parties were promptly informed of their existence;

       (3)    The proffering party forwarded a copy of the exhibits (if physically possible) to the opposing party.  If the exhibits may not be copied the proffering party must show that it has made the exhibits reasonably available for inspection by the opposing parties.

## XII.    DISCOVERY DOCUMENTS

Counsel must lodge the sealed original copy of any deposition transcript to be used at trial with the Clerk of the Court no later than **14 days before trial**.

Plaintiffs have indicated the intent to use the following discovery documents at trial:

1.    Deposition of Alex Fliehr (06/04/2019)

2.    Deposition of David Posey (04/01/2019)

3.    Deposition of Scott Ruppel (06/11/2019)

4.    Deposition of Edgar Sanchez (05/31/2019)

5.    Deposition of Matthew York (06/05/2019)

Defendants have indicated the intent to use the following discovery documents at trial:

1.    Deposition of Scott Ruppel

2.    Deposition of Edgar Sanchez

3.      Deposition of Thomas Resk, M.D.

4.      Deposition of David Posey, M.D.

5.      Deposition of Scott Rushing

6.      Deposition of Paula Rushing

XIII.   <u>FURTHER DISCOVERY OR MOTIONS</u>

None.  Discovery and law and motion are closed under the scheduling order issued in this case.

XIV.   <u>STIPULATIONS</u>

None.

XV.    <u>AMENDMENTS/DISMISSALS</u>

None.

XVI.   <u>SETTLEMENT</u>

The parties have engaged in settlement discussions, including a mediation before Hon. Kendall J. Newman (ret.) on February 9, 2024, which did not result in settlement.  No further court supervised settlement conference will be scheduled unless both parties indicate that a further settlement conference may be productive.

XVII.  <u>JOINT STATEMENT OF THE CASE</u>

The parties have agreed to the following joint statement of the case:

This trial will focus on whether police employed excessive force during an encounter with Tyler Rushing.  On July 23, 2017, Chico Police Department officers, including Scott Ruppel, Cedric Schwyzer, Alex Fliehr, and Jeremy Gagnebin, encountered Tyler Rushing inside a bathroom of the Mid Valley Title Company in Chico, California.  A struggle between Tyler Rushing and the officers resulted.  Alex Fliehr deployed a taser against Tyler Rushing.  Tyler Rushing died at the scene.  Tyler Rushing is survived by his parents, Scott Rushing and Paula Rushing.

XVIII. <u>SEPARATE TRIAL OF ISSUES</u>

The court will bifurcate the trial with respect to plaintiffs' punitive damages claim as follows.  The court will submit the question of defendants' liability, including liability for punitive damages, to the jury in the first phase of trial.  If the jury makes the requisite finding that

/////

11

punitive damages are available, the trial will then proceed to a second phase on the question of the amount of punitive damages to be awarded.

XIX.   IMPARTIAL EXPERTS/LIMITATION OF EXPERTS

None.

XX.   ATTORNEYS' FEES

Plaintiffs will seek attorneys' fees and costs if they prevail.

XXI.   TRIAL PROTECTIVE ORDER AND REDACTION OF TRIAL EXHIBITS

None.

XXII.   MISCELLANEOUS

None.

XXIII.   ESTIMATED TIME OF TRIAL/TRIAL DATE

Jury trial is scheduled for **October 7, 2024**, at 9:00 a.m. in Courtroom 4 before the Honorable Dale A. Drozd.  Trial is anticipated to last approximately 8 court days.  The parties are directed to Judge Drozd's Standing Order in Civil Actions, available on his webpage on the court's website.

Counsel are directed to contact Pete Buzo, courtroom deputy, at (916) 930-4016, no later than one week prior to trial to ascertain the status of the trial date.

XXIV. PROPOSED JURY *VOIR DIRE* AND PROPOSED JURY INSTRUCTIONS

The parties shall file any proposed jury *voir dire* **7 days before trial**.  Each party will be limited to fifteen minutes of supplemental jury *voir dire*.

The court directs counsel to meet and confer in an attempt to generate a joint set of jury instructions and verdicts.  The parties shall file any such joint set of instructions **14 days before trial**, identified as "Joint Jury Instructions and Verdicts."  To the extent the parties are unable to agree on all or some instructions and verdicts, their respective proposed instructions are due **14 days before trial**.

Counsel shall e-mail a copy of all proposed jury instructions and verdicts, whether agreed or disputed, as a Word document to dadorders@caed.uscourts.gov no later than **14 days before trial**; all blanks in form instructions should be completed and all brackets removed.

1    Objections to proposed jury instructions must be filed **7 days before trial**; each objection

2  shall identify the challenged instruction and shall provide a concise explanation of the basis for

3  the objection along with citation of authority.  When applicable, the objecting party shall submit

4  an alternative proposed instruction on the issue or identify which of his or her own proposed

5  instructions covers the subject.

6  XXV.   <u>TRIAL BRIEFS</u>

7    As noted above, trial briefs are due **7 days before trial**.

8    IT IS SO ORDERED.

9  Dated:   **August 27, 2024**

10   DALE A. DROZD
     UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTACHMENT A**

Plaintiffs' Witness List

1.    Edgar Sanchez

2.    Scott Ruppel

3.    Cedric Schwyzer

4.    Alex Fliehr

5.    Jeremy Gagnebin

6.    Ian Dickerson

7.    Billy Aldridge

8.    Marcelo Escobedo

9.    Ryon Mitchell

10.   Scott Rushing

11.   Paula Rushing

12.   Matthew York

13.   David M. Posey, M.D.

14.   Thomas K. Resk, M.D.

15.   Roger A. Clark

16.   Jaron D. Ross, M.D.

17.   Joyce Weckl

18.   John D. Barta, M.D.

19.   Bill L. Posey

20.   County of Butte Custodian of Records

21.   City of Chico Custodian of Records

**ATTACHMENT B**

Defendants' Witness List

1.    Edgar Sanchez

2.    Scott Ruppel

3.    Cedric Schwyzer

4.    Alex Fliehr

5.    Jeremy Gagnebin

6.    Ian Dickerson

7.    Marcelo Escobedo

8.    Ryon Mitchell

9.    Roy Partch

10.   Scott Rushing

11.   Paula Rushing

12.   Clarence Robert Chapman

13.   David Barnes, M.D.

14.   Parris Ward, J.D.

15.   Mark Kroll, PhD

16.   Thomas K. Resk, M.D.

17.   David M. Posey, M.D.

18.   Bill L. Posey

19.   Mark H. Schwab

20.   John M. Whitman, M.D.

21.   David Walter McKinney, M.D.

22.   Craighton Chin, M.D.

23.   Lt. Jason Barkley

24.   Brandy C. Spas

**ATTACHMENT C**

Joint Exhibit List

| Exh. | Description |
|------|-------------|
| 1 | Body-Worn Camera Recordings |
| 2 | Autopsy Reports of Tyler Rushing, including report prepared by Dr. Thomas Resk and Dr. David M. Posey |

**ATTACHMENT D**

Plaintiffs' Exhibit List

| Exh. | Description |
|------|-------------|
| 1 | Incident Photos |
| 2 | Training Records of Scott Ruppel, Cedric Schwyzer, Alex Fliehr, and Jeremy Gagnebin |
| 3 | Chico Police Department Policy Manual |
| 4 | California Peace Officer Standards and Training ("POST") Learning Domains |
| 5 | Documents Compelled for Production in *Rushing v. City of Chico*, No. 23-cv-02395 (Cal. Super. Ct., Butte County), including the Chico Police Department PowerPoint based on the Rushing Officer-Involved Shooting |
| 6 | Family Photos |
| 7 | Butte County District Attorney's Office – Officer-Involved Shooting Investigation (Butte County District Attorney's Office No. 1700279 / Chico Police Department No. 17005125), including reports [COB 000001–COB 003595, COB 003761–COB 003774, COB 003776, COB 003778, COB 003780, COB 003782, COB 003783–COB 003819], video recordings [COB 003596–COB 003617, COB 003619–COB 003638, COB 003749–COB 003760, COB 003775, COB 003777, COB 003779, COB 003781], and audio recordings [COB 003618, COB 003639–COB 003748]. |
| 8 | Plaintiffs' documents, including financial documents, tax returns, correspondence, medical records, text messages, emails, photos, and recordings [ETSR 1–ETSR 301, SKR 1–SKR 18, PLR 1–PLR 112] |
| 9 | Expert Report of Roger A. Clark, including associated materials (08/09/2019) |
| 10 | Expert Report of Jaron D. Ross, M.D., including associated materials (08/02/2019) |

1

**ATTACHMENT E**

2

Defendants' Exhibit List

| Exh. | Description |
|------|-------------|
| A | Butte County District Attorney's Office – Officer-Involved Shooting Investigation, including all attachments (BCDA No. 1700279/Chico PD No. 17005125) |
| B | Real time recordings taken from body camera worn by Defendant Cedric Schwyzer in multiple view format |
| C | Real time recordings taken from body camera worn by Defendant Alex Fliehr in multiple view format |
| D | Real time recordings taken from body camera worn by Defendant Jeremy Gagnebin in multiple view format |
| E | Real time recordings taken from body camera worn by Ryon Mitchell in multiple view format |
| F | Real time recordings taken from body camera worn by Roy Partch |
| G | Still images taken from body camera recording of Defendant Cedric Schwyzer |
| H | Still images taken from body camera recording of Defendant Jeremy Gagnebin |
| I | Still images taken from body camera recording of Roy Partch |
| J | Chico Police Department Administrative Investigation Report (PCN:17-14 / CPD 17-5125), including all attachments |
| K | Expert Report of Clarence Robert Chapman, including all attachments |
| L | Expert Report of David Barnes, including all attachments |
| M | Expert Report of Parris Ward, including all attachments |
| N | Expert Report of Mark Kroll, including all attachments |
| O | Butte County District Attorney Letter of September 28, 2017 |