UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF TYLER S. RUSHING, et al., | No. 2:18-cv-01692-DAD-AC |
| Plaintiffs, | |
| v. | TENTATIVE RULINGS ON MOTIONS *IN LIMINE* |
| AG PRIVATE PROTECTION, INC, et al., | (Doc. Nos. 116, 117, 118, 119, 120) |
| Defendants. | |

This matter is before the court on the motions *in limine* filed on behalf of plaintiffs Estate of Tyler S. Rushing, et al. (Doc. No. 116) and defendants Chico Police Department, et al. (Doc. Nos. 117, 118, 119, 120.) The court now issues the following tentative rulings addressing those motions *in limine*, but the court will briefly hear any further argument in response to these tentative rulings on Monday, October 7, 2024 at 9:00 a.m. in Courtroom 4, 15th floor. *See City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017) (noting that "a ruling on a motion *in limine* . . . falls entirely within the discretion of the district court").

**TENTATIVE RULINGS ON MOTIONS *IN LIMINE***

**Plaintiffs' MIL No. 1 (Doc. No. 116)**

Plaintiffs move to preclude defendants from referencing or presenting any argument/evidence regarding the prior rulings and decisions in this case, particularly: (1) defendants' motions for summary judgment; (2) the district court's grant of defendants'

1

1  motion for summary judgment; and (3) the Ninth Circuit's memorandum on appeal.  Plaintiffs
2  argue that evidence of prior rulings is not relevant under Federal Rule of Evidence 402, and the
3  probative value of the evidence is substantially outweighed by the risk or jury confusion and
4  unfair prejudice to the plaintiffs under Federal Rule of Evidence 403.  (Doc. No. 116 at 2.)
5       In opposition, defendants do not oppose limiting the physical introduction of the court
6  orders/memorandum, but do oppose the notion that defendants should be precluded from
7  introducing evidence that it has already been determined in this case that:  the gunshots fired by
8  Ruppel were reasonable as a matter of law under the totality of the circumstances; 2) the tactical
9  plan to enter the premises was reasonable based on the Ninth Circuit's holding that "a reasonable
10 jury could conclude that a right of Rushing's was violated by Fliehr's tasering of Rushing but
11 could not conclude that a right was violated by the officers' conduct beforehand;" and (3) the
12 decision to release the canine and the subsequent dog bite was found to be reasonable as a matter
13 of law.  They argue that it is critical for the jury to understand the narrow scope of the issues that
14 remain.  (Doc. No. 131 at 2–3.)
15      In reply, plaintiffs argue that defendants misrepresent the issues that remain to be tried in
16 this action.  Plaintiffs agree that Ruppel's two shots and the initial dog bite are not issues for the
17 jury, but they argue that as to Ruppel's "tactical plan to enter the premises," the Ninth Circuit
18 held that Ruppel *could* be liable for "[his] being in command of the operation" and thus this issue
19 will be decided by the jury.  (Doc. No. 142 at 2–3.)
20      First, the court disagrees with plaintiffs that the reasonableness of any tactical plan to
21 enter the premises on the night in question remains at issue to be resolved by the jury.  The Ninth
22 Circuit's memorandum decision on appeal stated that the case was remanded "for the District
23 Court to address in the first instance which, if any, of the City Defendants other than Fliehr may
24 be liable for Fliehr's tasering of Rushing.  The issue of liability should be addressed in the first
25 instance by the District Court because it turns on the facts of the particular City Defendants'
26 roles—for example, who heard Fliehr announce his intention to use the taser before deploying it
27 and Ruppel's being in command of the operation."  (Doc. No. 77 at 10.)  What remains for trial is
28 Fliehr's deployment of the taser after plaintiff had been shot twice by Ruppel and fell face down

on the floor and any other defendants' responsibility for Fliehr's action, not Ruppel's responsibility for the entire operation and plan to enter the premises.

However, the court ultimately agrees with plaintiffs that the parties should be precluded from referencing prior rulings in this case due to the risk of confusing the jury. *See Vaporstream, Inc. v. Snap Inc.*, No. 2:17-cv-00220-MLH-KS, 2020 WL 978731, at *10 (C.D. Cal. Feb. 28, 2020) ("[I]n general, the parties should be precluded from referencing the Court's prior rulings and orders . . . due to the substantial risk of confusing and misleading the jury."). Accordingly, the court will GRANT plaintiffs' MIL #1. *See Altair Instruments, Inc. v. Telebrands Corp*, No. 19-cv-8967-PSG-JC, 2021 WL 5238787, at *2 (C.D. Cal. Feb. 18, 2021) (granting the defendant's motion in limine to exclude the court's prior orders and opinions, including summary judgment orders, as unnecessary and confusing to the jury). Nonetheless, the court and the parties can and will emphasize to the jury the limited nature of the relevant issues to be resolved by them at trial without discussing with any specificity prior judicial orders. In short, that this trial will focus on Fliehr's deployment of the taser under the circumstances and, if found to be an excessive use of force, whether any other defendant is also liable for failure to adequately supervise Fliehr in that specific regard or by failing to prevent his taser shot.

**Plaintiffs' MIL No. 2 (Doc. No. 116)**

Plaintiffs note in their second MIL that the parties have reached an agreement that expert reports shall be excluded. (Doc. No. 116 at 4.) In opposition, defendants agree that the parties met and conferred and reached this agreement, so the MIL is moot and should be denied on that basis. (Doc. No. 132 at 2.) The court agrees, and plaintiffs' MIL #2 will be DENIED as moot.

**Plaintiffs' MIL No. 3 (Doc. No. 116)**

Plaintiffs seek to preclude as irrelevant the introduction of evidence that the Butte County District Attorney's Office and Chico Police Department investigated Tyler Rushing's death and found the uses of force lawful and declined to file criminal charges against any of the involved officers. (Doc. No. 116 at 4.) Plaintiffs specifically point to three documents listed on defendants' exhibit list: "Butte County District Attorney's Office – Officer-Involved Shooting Investigation" (Exhibit A), "Chico Police Department Administrative Investigation Report"

1  (Exhibit J), and "Butte County District Attorney Letter of September 28, 2017" (Exhibit O).  In
2  their opposition, defendants clarify that they do not seek to move these documents into evidence,
3  but they may elicit witness testimony related to the information included or referenced in the
4  letters.  (Doc. No. 133 at 2.)  In reply, plaintiffs clarify that their motion does not concern whether
5  a witness may refresh their recollection with these documents, but it seeks to preclude their
6  introduction as inadmissible.  (Doc. No. 142 at 4–5.)

7    There does not appear to be a dispute between the parties.  Nonetheless, the court will
8  GRANT plaintiffs' motion and exclude these documents from evidence, to avoid the danger that a
9  jury finds that because the police department and Butte County DA's office found the force
10  lawful and declined to file criminal charges, that necessarily decides this case in defendants' favor
11  as well.  *See Arthur v. Whitman Cnty.*, No. 12-cv-365-LRS, 2014 WL 11515841, at *3 (E.D.
12  Wash. July 3, 2014) (granting the defendant's motion in limine to exclude an investigation report,
13  finding that "there is a significant danger a jury would allow [the HR director's] conclusions to
14  unduly sway it and essentially abdicate its fact-finding role to [the HR director]") (citing *Lewis v.*
15  *City of Chicago Police Dep't*, 590 F.3d 427, 442 (7th Cir. 2009) (finding that the trial court did
16  not abuse its discretion in excluding evidence of an investigation that "presents the question the
17  jury was tasked with answering" because "it could have confused the jury into thinking that the
18  issue was already decided")).

19  **Plaintiffs' MIL No. 4 (Doc. No. 116)**

20    Plaintiffs seek to preclude the introduction of evidence of awards, accolades, and
21  commendations received by any law enforcement officers or witnesses as irrelevant, non-
22  probative, and prejudicial.  (Doc. No. 116 at 5–6.)  In their opposition, defendants state that they
23  do not plan on introducing Officers Scott Ruppel, Cedric Schwyzer, Alex Fliehr, and Jeremy
24  Gagnebin's awards, accolades, and commendations into evidence but they reserve the right to use
25  this information for impeachment purposes in the event plaintiffs introduce any negative
26  character evidence against defendants.  (Doc. No. 134 at 2.)

27    The court finds that such evidence is not relevant to any claim or defense in this case and
28  accordingly will GRANT plaintiffs' motion.  *See Hermosillo v. Cnty. of San Bernardino*, No. 15-

4

1   cv-00033-DTB, 2017 WL 5479645, at *3 (C.D. Cal. Feb. 16, 2017) (granting the plaintiffs'

2   motion to exclude evidence of commendations, regardless of the defendants' argument that they

3   should "have the right to raise this evidence" "if plaintiff's counsel opens the door on this

4   subject," finding that the "[d]efendants have not explained how such evidence is relevant to any

5   claim or defense" and concluding "that any minimal probative value would be substantially

6   outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and

7   wasting time"); *Aguirre v. Guerrero*, No. 09-cv-6222 AG-DTB, 2014 WL 12703414, at *1 (C.D.

8   Cal. June 3, 2014) (granting the plaintiff's motion in limine to preclude evidence of any

9   commendations or awards received by the defendants under Rule 403).

10  **Plaintiffs' MIL No. 5 (Doc. No. 116)**

11      Plaintiffs seek to preclude any non-courtroom staff law enforcement officers and

12  witnesses from bringing firearms into the courtroom.  (Doc. No. 116 at 8.)  In opposition,

13  defendants argue that this MIL is unnecessary because the defendants are aware of and will

14  comply with the federal laws regarding possession of firearms in federal facilities.  (Doc. No. 135

15  at 2.)  The court will DENY plaintiffs' MIL #5 as unnecessary in light of the long-established

16  policy prohibiting possession of firearms in federal courthouses, which will be enforced

17  throughout the duration of this trial.

18  **Defendants' MIL No. 1 (Doc. No. 117)**

19      Defendants move to exclude evidence calling into question the reasonableness of officer

20  conduct prior to the deployment of the taser, including evidence as to whether Tyler Rushing was

21  experiencing a mental health episode.  (Doc. No. 117 at 2.)  Specifically, defendants expect

22  plaintiffs to offer evidence related to:  (1) tactical decisions made at the scene for purposes of

23  entering the bathroom; (2) observations made by Defendant Fliehr earlier in the day at another

24  location regarding a "suspicious person" who he later learned was Tyler; and (3) whether Tyler's

25  behavior at the scene suggested that he was suffering from a mental episode at the time of the

26  incident at Mid Valley.  (*Id*. at 3.)

27      In opposition, plaintiffs provide more description as to the encounter between Fliehr and

28  Rushing that defendants seek to preclude:

> At approximately 9:18 p.m. on the evening of July 23, 2017, Officer Fliehr was dispatched to respond to a report of a "suspicious person" in an alley behind a commercial building in Chico. Fliehr was informed that the person was loading a shopping cart with items from a donation bin and appeared to be fashioning a spear out of an object. Upon arriving at the scene, Fliehr observed a person holding what appeared to be curtain rods. Fliehr asked the individual to put down the objects. The individual responded in the affirmative but then immediately ran away. Having no basis on which to detain the subject, Fliehr called off the search and moved on to other calls.
>
> When Chico PD officers, including Sergeant Ruppel and Officer Fliehr, responded to Mid Valley [Title Company], they found Sanchez in the enclosed outdoor patio. Sanchez informed Ruppel that a subject had jumped out of the bushes and stabbed him in the arm and that he had feared for his life and fired at the suspect. Based on the description provided, Fliehr believed that the suspect may have been the same subject he encountered earlier in the evening.

(Doc. No. 62 at 2–3.) Based on Fliehr's encounter with Rushing, Fliehr recognized that Rushing's behavior was "not normal behavior," and reported that Rushing appeared to be "under the influence of narcotics." (Doc. No. 89-3 at 15–16) ("not normal behavior"); *id.* at 20 ("Officer Fliehr put out over the police radio the subject had fled the scene and appeared to be under the influence of narcotics.").[1]

Plaintiffs also further describe the observations of Sgt. Ruppel that they presumably plan to introduce into evidence. (Doc. No. 126 at 4.) (citing Doc. No. 84-8 at 4 ("Sgt. Ruppel said the suspect did respond but some of the response he could not understand. Sgt. Ruppel said the suspect's responses he could understand were sarcastic and the suspect would repeat what he said. Sgt. Ruppel said as he was communicating with the suspect, he could hear him breaking things inside the bathroom. Sgt. Ruppel said at one point, the suspect opened the door and threw items, although he did not believe he was throwing the items at them. Sgt. Ruppel described those items as broken glass. Sgt. Ruppel said he could hear the suspect turning the water on and he felt the suspect was attempting to flood the bathroom. Sgt. Ruppel said he continued to hear the suspect

---

[1] "Blood drawn during the autopsy [of Tyler Rushing] was sent for three separate rounds of toxicology at two different testing laboratories. The only controlled substance found in the blood was marijuana—at a moderate level." (Doc. No. 84-6 at 11.)

1    moving around in the bathroom and he would periodically open and shut the door. . . . Sgt.
2    Ruppel said he could hear the suspect screaming and he was a little animated.")).

3         Plaintiffs argue that "[p]roper application of the reasonableness test requires careful
4    attention to the facts and circumstances of each particular case," including "[t]he events leading
5    up to the [use of force], such as the officer's tactics . . . ." *Lam v. City of San Jose*, 869 F.3d
6    1077, 1087 (9th Cir. 2017) (internal citation & alteration omitted).  They also argue that "[Ninth
7    Circuit] precedent establishes that if officers believe a suspect is mentally ill, they should make a
8    greater effort to take control of the situation through less intrusive means." *Vos v. City of*
9    *Newport Beach*, 892 F.3d 1024, 1033–34 (9th Cir. 2018).  Based on this authority, plaintiffs
10   assert that the circumstances leading up to the tasing, including any evidence that the officers
11   believed that the decedent may have been mentally ill, would be relevant to a determination of
12   excessive force.

13        Defendants argue that this evidence is not relevant to whether deployment of the taser was
14   justified and would unduly delay presentation of evidence that is material.  (Doc. No. 117 at 3, 6.)
15   Further, they argue that speculative evidence as to whether the decedent was experiencing a
16   mental episode would pose a substantial danger of unfair prejudice because the jury would get the
17   impression, without any supporting evidence, that the officers should have addressed the situation
18   differently because they were dealing with a mentally ill suspect.  (*Id.* at 5–6.)

19        The court finds that sufficient background information is necessary to provide context to
20   the jury about the events leading up to and including the incident.  However, the court reminds
21   plaintiffs that the Ninth Circuit has already held in this case that "a reasonable jury could not find
22   that the initial dog bite or Ruppel's first shot were unreasonable given the 'threat of serious
23   physical harm' that Rushing posed."  (Doc. No. 77 at 5.)  As to the tasering only by Fliehr, the
24   panel found that a genuine issue of material fact existed "concerning the location of Rushing's
25   right hand and his motionlessness after falling to the floor," meaning that a reasonable jury could
26   conclude that "Fliehr violated a right of Rushing's when he tasered Rushing in the back over one
27   minute after Rushing fell face down on the floor after being shot twice by Ruppel."  (*Id.*)  Thus,
28   the jury will not be called upon to decide if the officers' decision to breach the bathroom was

reasonable; they will simply be asked to decide if the tasering by Fliehr, once the bathroom was breached by officers and Rushing had been shot twice by Ruppel, was reasonable.

Accordingly, defendants' MIL #1 will be GRANTED in part and DENIED in part. The court will permit plaintiffs to present evidence of prior events for the purpose of orienting the jury to the context. Plaintiffs can also present evidence of the earlier interaction between Fliehr and Rushing, only as relevant to demonstrate plaintiff's apparent theory that Fliehr believed Rushing to be behaving abnormally and appeared to be under the influence of drugs and thus should have approached his decision to use his taser with greater care. However, plaintiffs cannot present any of the evidence of prior events for the purpose of calling into question the reasonableness of the tactical decisions made at the scene for purposes of entering the bathroom.

**Defendants' MIL No. 2 (Doc. No. 118)**

Defendants move to exclude evidence that Tyler Rushing did not have a history of felony arrests or convictions. (Doc. No. 118 at 3.) Defendants anticipate that plaintiffs will attempt to offer this evidence to paint Tyler in a favorable light. (*Id*.) Defendants argue that such evidence is irrelevant, that any probative value would be outweighed by risk of confusing the issues or misleading the jury, and that it would be improper character evidence. (*Id*. at 3–5.)

In opposition, plaintiffs argue that such evidence is relevant in measuring the damages owed to his relatives and his earning capacity. (Doc. No. 126 at 7.) Plaintiffs cite a number of cases in which courts have denied a plaintiff's motion in limine to exclude evidence of criminal history, finding that the evidence of criminal history is relevant to damages. *See Ramirez v. City of Oxnard*, No. 2:12-cv-09697-SVW-FFM, 2013 WL 12142615, at *2 (C.D. Cal. Aug. 13, 2013) ("Courts confronted with this question agree that evidence of the decedent's criminal history is relevant to measuring the damages owing to his relatives." ); *Fernandez v. Taser Int'l, Inc*., No. C06-4371-SBA, 2008 WL 4775779, at *4 (N.D. Cal. Oct. 27, 2008) (denying the plaintiff's motion in limine to exclude evidence of the decedent's criminal history as to the damages phase of the trial); *Est. of Casillas v. City of Fresno*, No. 1:16-cv-1042-AWI-SAB, 2019 WL 586747, at *4 (E.D. Cal. Feb. 13, 2019) ("the Court will deny [the] plaintiffs' motion in limine asking for exclusion of evidence of Casillas's criminal record" as the evidence is "keyed specifically to the

issue of damages," but the "[p]laintiffs may request a limiting instruction to avoid any potential use of this evidence to prove character"). Plaintiffs also argue that this evidence is not improper character evidence because they do not intent to offer the lack of criminal history in attempt to convince the jury that Rushing acted in accordance with law. (*Id*. at 8.)

In reply, defendant argues that none of plaintiff's cited authority state that a lack and/or absence of criminal history is relevant. (Doc. No. 138 at 2.)

There appears to be no authority directly supporting the plaintiff's proposition that a decedent's lack of criminal history is relevant evidence in determining damages for their family members. In fact, in *Nash-Perry v. City of Bakersfield*, another judge of this district ruled to exclude a decedent's lack of criminal history, finding that the plaintiffs had not shown relevance. No. 1:18-cv-1512-JLT-BAK-SAB, 2022 WL 3357516, at *17 (E.D. Cal. Aug. 15, 2022) ("In general, an individual's criminal history has no likelihood of proving any material facts relevant to claims for excessive force. However, evidence regarding a decedent's prior criminal history, or lack thereof, may be relevant and admissible in an excessive force case if the officers were aware of such information at the time of the incident. . . . Plaintiffs do not present any evidence that the responding officers, including Patino, were aware that Decedent did not have a criminal history. Further, Plaintiffs do not show how the evidence is relevant—despite Patino's lack of knowledge—to the matters to be resolved by the jury.") However, here plaintiffs have put forward an argument for relevance – namely, that the evidence could be relevant to the decedent's potential loss of future earning capacity. The court finds that this is sufficient to satisfy the low threshold of FRE 401. The court is also not persuaded by defendants' argument that this evidence will prejudice defendants (by convincing the jury that the decedent acted in accordance with the law on the day of the deadly incident), and defendants may request and propose a limiting instruction to avoid any potential use of this evidence to prove the decedent's character.

Accordingly, defendants' MIL No. 2 is DENIED.

**Defendants' MIL No. 3 (Doc. No. 119)**

Defendants move to exclude any evidence of policies from the Chico Police Department Policy Manual except for those related to deployment of a taser as well as all Commission on

9

1 Peace Officer Standards and Training ("POST") Learning Domains.  (Doc. No. 119 at 3.)
2 Defendants argue that only policies related to the deployment of the taser are relevant to this case,
3 and because plaintiffs' police procedures expert admitted in deposition that department policies
4 take precedence over POST Learning Domains, all Learning Domains should be excluded
5 because the jury could by mislead into potentially applying inapplicable standards.  (*Id*. at 3–5.)

6 In opposition, plaintiffs argue that the Chico Police Department's policies beyond its taser
7 policy, including its general use of force policy, are relevant.  They also argue that the POST
8 Learning Domains are not prejudicial because defendants merely assume that the jury will not
9 follow the jury instructions and applicable legal standards. (Doc. No. 126 at 9.)

10 Defendants have pointed the court to no authority suggesting that the POST Learning
11 Domains should be excluded from evidence as irrelevant simply because of deposition testimony
12 suggesting that department policies take priority over POST Learning Domains if the two are in
13 conflict.  Further, while the court certainly understands the need to constrain the trial to the
14 remaining issue of excessive force as it pertains to the tasering of the decedent after he had been
15 shot twice, the court cannot determine prior to trial that only the tasering policy, and not also the
16 general use of force policy, is relevant.  As to defendant's concern of prejudice, courts have found
17 it more prejudicial than probative to present "extensive" POST training materials to the jury in
18 § 1983 cases.  *Luong v. SF City & Cnty.*, No. C 11-05661-MEJ, 2013 WL 2389648, at *10 (N.D.
19 Cal. May 30, 2013), *aff'd sub nom. Luong v. City & Cnty. of San Francisco Police Dep't*, 630 F.
20 App'x 691 (9th Cir. 2015) (finding that the district court properly excluded "voluminous police
21 training materials as needlessly cumulative since Plaintiffs had already read substantial portions
22 of the materials into the record").  However, the court is not under the impression that plaintiffs
23 are attempting to introduce voluminous amounts of cumulative material.  Instead, the court
24 understands defendants' objection of prejudice to concern the possibility that the jury might hold
25 the defendants to the standards defined in those materials, as opposed to the law they will be
26 instructed upon.  Defendants have not directed the court to any authority supporting this
27 objection.  In contrast, courts have concluded that "a rational jury [can] rely upon [testimony
28 about POST and other applicable police standards] in assessing whether the officers' use of force

was unreasonable." *Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005) (disapproved of on other grounds); *Burke v. City of Santa Monica*, No. 09-cv-02259-MMM-PLA, 2011 WL 13213593, at *24 (C.D. Cal. Jan. 10, 2011) (noting that the Ninth Circuit has found POST Learning Domains to be admissible and expert reliance on them to be proper); *Conan v. City of Fontana*, No. 16-cv-1261-KK, 2017 WL 8941499, at *10 (C.D. Cal. Oct. 6, 2017) ("The Ninth Circuit has held that a rational jury can rely on evidence of whether an officer's conduct comported with Police Officer Standards and Training ('POST') in assessing whether an officers' use of force was unreasonable.").

Accordingly, defendants' MIL #3 as to the POST Learning Domains and policies from the Chico Police Department Policy Manual will be DENIED.

**Defendants' MIL No. 4 (Doc. No. 120)**

Defendants move to exclude photographs taken of the decedent at the scene, photographs taken at the time of the autopsy, and family photographs. (Doc. No. 120 at 3.) Defendants argue that these photographs, which include pictures of the decedent's gunshot wounds, dog bites, taser wounds, and other injuries, are not relevant to the issues remaining in this case because it is undisputed that the decedent was shot and that Officer Fliehr deployed the taser. (*Id*. at 3–4.) Further, defendants argue that any probative value is substantially outweighed by unfair prejudice and risk of confusing the issues because all of these pictures (and particularly the graphic and gruesome ones) would evoke strong emotions and sympathy, leading jurors to condemn the defendants regardless of their findings of law. (*Id*. at 4.)

In opposition, plaintiffs argue that the injury photos are relevant to evaluating the amount of force used, and such photos are routinely admitted as relevant to liability and damages. (Doc. No. 126 at 10.) Plaintiffs also argue that the family photos are relevant to plaintiffs' claim for non-economic damages, showing the closeness of the family unit. (*Id*.) As to prejudice, plaintiffs argue that defendants merely assume that the jury will not follow the court's instructions as to the law. (*Id*. at 11.)

/////

/////

1    In reply, defendants advance a new argument that only three of the family photos that

2 plaintiffs seek to introduce were produced in discovery, and thus the others should be excluded on

3 that basis.  (Doc. No. 140 at 2.)

4    As to the family photos, the court will deny a categorical exclusion of all pre-death photos

5 of decedent.  *See Cotton v. City of Eureka, Cal.*, No. 08-cv-04386-SBA, 2010 WL 5154945, at

6 *21 (N.D. Cal. Dec. 14, 2010), *on reconsideration sub nom. Cotton ex rel. McClure v. v. City of

7 Eureka*, No. 08-cv-04386-SBA, 2011 WL 4047490 (N.D. Cal. Sept. 8, 2011) ("Indeed, [f]ederal

8 and state courts routinely admit photographs of the decedent in wrongful death suits, as they are

9 probative of the love and affection shared among the Deceased and other members of the

10 [decedent's] family.") (internal citations and quotations omitted).  However, plaintiffs have not

11 identified how many photos they plan to introduce.  Depending on the number, such photos may

12 well become cumulative.

13    As to the post-death photos, in a trial involving claims of excessive force, evidence of "the

14 severity of injuries" is relevant to "evaluating the amount of force used."  *Felarca v. Birgeneau*,

15 891 F.3d 809, 817 (9th Cir. 2018).  Courts routinely permit the introduction of photographs

16 depicting the extent of a plaintiff's injuries as relevant to both liability and damages.  *See Aslan v.

17 Ferrari North Am., Inc*., No. 2:16-cv-02574-AB-SS, 2018 WL 6321635, at *5 (C.D. Cal. Oct. 19,

18 2018); *Wright v. Watkins and Shepard Trucking, Inc*., No. 2:11-cv-01575-LRH-GWF, 2016 WL

19 10749220, at *7 (D. Nev. Jan. 19, 2016).  In this case, such photos may be relevant to the jury's

20 understanding of both the level of any injury caused by the taser and the level of threat or non-

21 threat that the decedent posed based on his injuries suffered prior to the tasering.  However,

22 because the photographs here may graphically portray significant injury, the court will entertain

23 Rule 403 objections at trial to the extent plaintiffs seek to introduce multiple photographs that

24 may be unnecessarily cumulative to limit the prejudicial effect.  *See Dibbern v. City of

25 Bakersfield*, No. 1:22-cv-00723-CDB, 2024 WL 3993196, at *14 (E.D. Cal. Aug. 29, 2024)

26 (denying the defendants' motion in limine to exclude graphic photos but advising the parties that

27 multiple photographs may be unnecessarily cumulative).

28 /////

Accordingly, defendants' MIL #4 will be DENIED as to the post-death photos without prejudice to a specific objection at trial, but DEFERRED as to the family photos to hear argument from plaintiffs regarding their intent to introduce photographs that were not produced in discovery.

**CONCLUSION**

For the reasons explained above, the undersigned tentatively rules as follows:

1. The following motions *in limine* are GRANTED in part and DENIED in part, as explained in this order:  Doc. Nos. 116, 117;

2. The following motions *in limine* are DENIED:  Doc. Nos. 118, 119;

3. The following motion *in limine* is DENIED in part and DEFERRED in part, as explained in this order:  Doc. No. 120.[2]

IT IS SO ORDERED.

Dated:   **October 4, 2024**

*Dale A. Drozd*
DALE A. DROZD
UNITED STATES DISTRICT JUDGE

---

[2] According to the California Department of Health, the test positivity percentage for COVID-19 in California has fallen rapidly over the past 30 days from 13.3 % to 5.6%. Although the percentage remains slightly above 5%, thus indicating under California protocols the substantial spread of infection, the trend indicates a current rapid decline in positive test rates. Accordingly, the court is lifting the mandatory masking requirement for next week and making masking optional.

13